COPY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 08 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By: _____ Deputy
Steven Drew

1  Benno Ashrafi, Esq. (CSBN 247623)
2  Leonard Sandoval, Esq. (CSBN 273992)
   WEITZ & LUXENBERG, P.C.
3  1880 Century Park East, Suite 700
   Los Angeles, California 90067
4  Tel.: (310) 247-0921
   Fax: (310) 786-9927
5
6  Attorneys for Plaintiffs
7
8      SUPERIOR COURT OF THE STATE OF CALIFORNIA
9            FOR THE COUNTY OF LOS ANGELES
10 DOUGLAS WILBER, an individual;    CASE NO.
11 FAITH WILBER, an individual;       19STCV15971
12          Plaintiffs,
13
14      vs.                          PLAINTIFFS' COMPLAINT FOR
                                     DAMAGES
15 AIR & LIQUID SYSTEMS
   CORPORATION, a subsidiary of       1. NEGLIGENCE
16 AMPCO-PITTSBURGH                    2. BREACH OF EXPRESS AND
   CORPORATION, individually and as      IMPLIED WARRANTIES
17 successor by merger to BUFFALO      3. STRICT LIABILITY
   PUMPS INC., individually and successor
18 in interest to BUFFALO FORGE       4. PREMISES OWNER/
   COMPANY;                              CONTRACTOR LIABILITY
19 AURORA PUMP COMPANY;              5. LOSS OF CONSORTIUM
20 BLACKMER PUMP COMPANY;
21 BORGWARNER MORSE TEC LLC as       DEMAND FOR JURY TRIAL
   successor by merger to BORG-WARNER
22 CORPORATION;
23 BW/IP INC., individually and as
   successor in interest to BYRON JACKSON
24 PUMP CO.;
25 CBS CORPORATION, f/k/a VIACOM,
   INC., successor by merger to CBS
26 CORPORATION f/k/a WESTINGHOUSE
   ELECTRIC CORPORATION as successor
27 in interest to BF STURTEVANT
28 CLA-VAL CO., a division of GRISWOLD

PLAINTIFFS' COMPLAINT

INDUSTRIES;
1   CRANE CO.;
2   ELLIOTT COMPANY aka ELLIOTT
    TURBOMACHINERY CO., INC.;
3   FLOWSERVE US INC., individually and
    as successor in interest to EDWARD
4   VALVE, INC.;
5   FMC CORPORATION, individually and
    as successor in interest to NORTHERN
6   PUMP COMPANY f/k/a NORTHERN
    FIRE APPARATUS COMPANY,
7   CHICAGO PUMP COMPANY AND
    PEERLESS PUMP COMPANY;
8   FOSTER WHEELER, LLC as successor
9   in interest to FOSTER WHEELER
    CORPORATION and FOSTER
10  WHEELER ENERGY CORPORATION;
11  GARDNER DENVER, INC. f/k/a
    GARDNER DENVER MACHINERY,
12  INC.;
13  GENERAL ELECTRIC COMPANY;
    GOULDS PUMPS, INC.;
14  HONEYWELL INTERNATIONAL,
15  INC., f/k/a and individually and as
    successor in interest to ALLIED SIGNAL,
16  INC., individually and as successor in
    interest to BENDIX CORPORATION;
17  IMO INDUSTRIES, INC., individually
18  and as successor in interest to DELAVAL
    STEAM TURBINE COMPANY and
19  DELAVAL INC.;
20  INGERSOLL-RAND COMPANY,
    individually and as successor in interest to
21  TERRY STEAM TURBINE COMPANY;
22  ITT LLC, f/k/a ITT CORPORATION,
    f/k/a ITT INDUSTRIES, INC., individually
23  and as successor in interest to BELL &
    GOSSETT COMPANY, FOSTER
24  ENGINEERING COMPANY and
25  KENNEDY VALVE COMPANY;
    THE NASH ENGINEERING
26  COMPANY;
    VIGOR SHIPYARDS, INC. formerly
27  known as TODD PACIFIC SHIPYARD
28  CORPORATION;

1  WARREN PUMPS, LLC. f/k/a
2  WARREN PUMPS, INC., individually and
   as successor in interest to QUIMBY PUMP
3  COMPANY,

4  and DOES 1 through 400, inclusive,

5                      Defendants.

6       COMES NOW, Plaintiffs DOUGLAS WILBER and FAITH WILBER for causes of

7  action against defendants and DOES 1 through 400, and each of them, inclusive, who files

8  this Complaint and alleges as follows:

9                          GENERAL ALLEGATIONS

10      1.      The true names and/or capacities, whether individual, corporate, partnership,

11 associate, governmental, or otherwise, of defendant DOES 1 through 400, inclusive, are

12 unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious

13 names.   Plaintiffs are informed and believe, and thereon allege, that each defendant

14 designated herein as a DOE caused injuries and damages proximately thereby to plaintiffs as

15 hereinafter alleged; and that each DOE defendant is liable to the plaintiffs for the acts and

16 omissions alleged herein below, and the resulting injuries to plaintiff, and damages sustained

17 by the plaintiffs. Plaintiffs will amend this complaint to allege the true names and capacities

18 of said DOE defendants when that same is ascertained.

19      2.      Plaintiffs are informed and believe, and thereon allege, that at all times herein

20 mentioned, each of the defendants and each of the DOE defendants were the agent, servant,

21 employee and/or joint venturer of the other co-defendants and other DOE defendants, and

22 each of them, and at all said times, each defendant and each DOE defendant, was acting in

23 the full course, scope and authority of said agency, service, employment and/or joint venture.

24      3.      Plaintiffs are informed and believe, and thereon allege, that all times

25 mentioned herein, defendants and DOES 1 through 400, and each of them, inclusive, were

26 also known as, formerly known as and/or were the successors and/or predecessors in

27 interest/business/product line or a portion thereof, assigns, a parent, a subsidiary (wholly or

28 partially owned by or the whole or partial owner), affiliate, partner, co-venturer, merged

WEITZ & LUXENBERG P.C.
A LAW CORPORATION
LOS ANGELES, CALIFORNIA 90012

-3-

1  company, alter egos, agents, equitable trustees and/or fiduciaries of and/or were members in
2  an entity, or entities engaged in the funding, researching, studying, manufacturing,
3  fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing,
4  buying, offering for sale, selling, inspecting, servicing, repairing, installing, demolishing,
5  contracting for installation, contracting others to install, repairing, marketing, warranting,
6  rebranding, manufacturing for others, packaging and advertising (a certain substance, the
7  generic name of which is asbestos, and/or other products, components and assemblies
8  containing said substance (hereafter "alternate entities"). Defendants and DOES 1 through
9  400, and each of them, inclusive, are liable for the acts, omissions and tortious conduct of its
10 successors and/or predecessors in interest/business/product line or a portion thereof, assigns,
11 parent, subsidiary, affiliate, partner, co-venturer, merged company, alter ego, agent, equitable
12 trustee, fiduciary and/or its alternate entities in that defendants and DOES 1 through 400, and
13 each of them, inclusive, enjoys the goodwill originally attached to each such alternate entity,
14 acquired the assets or product line (or portion thereof), and that there has been a virtual
15 destruction of plaintiff's remedy against each such alternate entity, and in that each such
16 defendant has the ability to assume the risk spreading role of each such alternate entity.

17        4.    Defendants placed their names, logos, and trademarks on asbestos products as
18 well as put out as their own asbestos products manufactured by others so as to be an apparent
19 manufacturer and liable as the manufacturer.

20        5.    Although the plaintiff may have been employed by defendant at the time of his
21 exposure to the defendant's asbestos-containing products (and to other asbestos-containing
22 products), or to asbestos by virtue of defendant's failure to protect from asbestos, each
23 defendant lacked workers' compensation insurance coverage during the years that the
24 plaintiff was exposed, having failed to secure the payment of workers' compensation through
25 mandated insurance or self-insurance coverage. In addition, the plaintiff's exposure to the
26 defendant's asbestos-containing products (and to other asbestos-containing products), or to
27 asbestos by virtue of defendant's failure to protect from asbestos, did not arise out of the
28 plaintiff's employment, as the defendant lacked the right to control the manner or means of

the plaintiff's work duties. Finally, the plaintiff was exposed to asbestos containing products that the defendant manufactured for sale to the general public, and which the plaintiff only incidentally used during the course of his work duties.

6.    Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, that defendants and DOES 1 through 400, and each of them, inclusive, were and are corporations organized and existing under the laws of the State of California or the laws of some state or foreign jurisdiction; that each of the said defendants and DOE defendants were and are authorized to do and are doing business in the State of California and regularly conducted business in the County of Los Angeles; and that certain defendants and DOES designate or have maintained principle places of business in the County of Los Angeles.

7.    Plaintiff DOUGLAS WILBER was exposed to asbestos while serving in the US Navy from 1970-1980 at San Diego Naval Shipyard, Long Beach Naval Shipyard, Pearl Harbor, Todd Shipyard, Tacoma, Washington and aboard ships, but not limited to, USS Thomaston LSD-28 and USS Orleck DD-886, as well as a mechanic and through home auto repair from approximately 1968 to 1980, who at various locations, including within the State of California, used, handled or was otherwise exposed to asbestos, asbestos containing products and/or products designed to be used in association with asbestos products or, and/or products that created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos fibers, and/or by virtue of the creation of asbestos dust and failure to protect from asbestos dust, and/or on or about the premises of and by, defendants and DOES 1 through 400, and each of them, inclusive, including: AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and successor in interest to BUFFALO FORGE COMPANY (for gaskets, packing, insulation and pumps); AURORA PUMP COMPANY (for gaskets, packing, insulation and pumps); BLACKMER PUMP COMPANY (for gaskets, packing, insulation and pumps); BORGWARNER MORSE TEC LLC as successor by merger to BORG-WARNER CORPORATION (for automotive products); BW/IP, INC, individually and as successor in

-5-

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  interest to BYRON JACKSON PUMP CO. (for gaskets, packing, insulation and pumps);
2  CBS CORPORATION f/k/a VIACOM, INC., successor by merger to CBS
3  CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in
4  interest to BF STURTEVANT (for BF Sturtevant compressors, pumps, turbines, insulation,
5  gaskets, and packing); CLA-VAL CO., a division of GRISWOLD INDUSTRIES (for
6  gaskets, packing, insulation and valves); CRANE CO. (for gaskets, packing, insulation and
7  pipe); ELLIOTT COMPANY aka ELLIOTT TURBOMACHINERY CO., INC. (for
8  gaskets, packing, insulation, pumps and turbines); FLOWSERVE US INC, individually
9  (and as successor in interest to EDWARD VALVE, INC (for gaskets, packing, insulation and
10  valves); FMC CORPORATION, individually and as successor in interest to NORTHERN
11  PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY, CHICAGO
12  PUMP COMPANY AND PEERLESS PUMP COMPANY (for gaskets, packing, insulation,
13  pumps and valves); FOSTER WHEELER, LLC, as successor in interest to FOSTER
14  WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION (for
15  boilers, economizers, insulation, gaskets and packing); GARDNER DENVER, INC. f/k/a
16  GARDNER DENVER MACHINERY, INC. (for gaskets, packing, insulation and pumps);
17  GENERAL ELECTRIC COMPANY (for turbines, pumps, compressors and electrical
18  equipment); GOULDS PUMPS, INC. (for gaskets, packing, insulation and pumps);
19  HONEYWELL INTERNATIONAL INC., f/k/a and, individually and as successor in
20  interest to ALLIED SIGNAL, INC., individually and as successor int interest to BENDIX
21  CORPORATION (for automotive products); IMO INDUSTRIES, INC., sued individually
22  and as successor in interest to DELAVAL STEAM TURBINE COMPANY and DELAVAL
23  INC. (for gaskets, packing, insulation, pumps and turbines); INGERSOLL-RAND
24  COMPANY, individually and as successor in interest to TERRY STEAM TURBINE
25  COMPANY (for pumps, insulation, gaskets and packing); ITT LLC, f/k/a ITT
26  CORPORATION, f/k/a ITT INDUSTRIES, INC., individually and as successor-in-interest
27  to BELL & GOSSETT COMPANY, FOSTER ENGINEERING COMPANY, and
28  KENNEDY VALVE COMPANY (for pumps, valves, turbines, insulation, gaskets and

-6-

PLAINTIFFS' COMPLAINT

1  packing); THE NASH ENGINEERING COMPANY (for pumps, insulation, gaskets, and
2  packing); VIGOR SHIPYARDS, INC. formerly known as TODD PACIFIC SHIPYARD
3  CORPORATION (for creating asbestos dust); WARREN PUMPS, LLC, f/k/a WARREN
4  PUMPS, INC., individually and as successor in interest to QUIMBY PUMP COMPANY
5  (for gaskets, packing, insulation and pumps). Plaintiffs further allege, Defendants, and
6  DOES 1 through 400, and each of them inclusive designed, manufactured, sold, supplied,
7  distributed and otherwise marketed asbestos containing products, equipment and systems
8  with original and replacement asbestos-containing products, components, and integral parts;
9  that defendants and DOES 1 through 400 inclusive specified and required the use of such
10 original and replacement asbestos containing parts and components that were integral to their
11 respective asbestos-containing products normal use and operation and that by design such
12 normal use and operation, directly created, generated, released, and exposed plaintiff
13 DOUGLAS WILBER to asbestos-containing dust, debris, fiber and particulate from such
14 integral, specified, necessary and required asbestos products and components; that as a direct
15 and proximate result of all of the above, plaintiff DOUGLAS WILBER was exposed by
16 Defendants and DOES 1 through 400, inclusive to asbestos-containing dust, debris, fiber and
17 particulate which increased his risk of developing the mesothelioma and asbestos disease(s)
18 from which he now suffers.
19      8.    Plaintiffs are informed and believe, and thereon allege, that asbestos related
20 diseases such mesothelioma, lung cancer, asbestosis, scarring of the lungs and pleural
21 plaques are progressive lung diseases caused by, cumulative inhalation of asbestos fibers
22 without perceptible trauma and that said diseases result from exposure to asbestos and
23 asbestos products over a period of time.
24      9.    As set forth herein this complaint, and as a result of plaintiff DOUGLAS
25 WILBER's asbestos exposure to the products of and/or on the premises of defendants and
26 DOES 1 through 400, and each of them, inclusive, plaintiff DOUGLAS WILBER was
27 diagnosed with mesothelioma on or about October, 2018; which is life threatening,
28 debilitating and likely terminal, and plaintiff continues to endure great physical pain and

1    suffering, mental anguish, loss of enjoyment of life and the loss of earnings, earning capacity
2    and attendant medical expenses; all to the plaintiffs' general and special damage in excess of
3    the jurisdictional limits of the unlimited Court.

### FIRST CAUSE OF ACTION

### NEGLIGENCE

#### (Against All Defendants and DOES 1 through 400)

7        10.   Plaintiffs re-allege and incorporate here by reference, as though fully set forth
8    at length herein, all of the allegations of paragraphs 1 through 9 above, inclusive.

9        11.   Plaintiff DOUGLAS WILBER was a worker and end user who used, handled
10   or was otherwise exposed to asbestos, asbestos containing products and/or products designed
11   to be used in association with asbestos products of, and/or products that created an asbestos
12   hazard, and/or safety equipment intended to block the entry of asbestos fibers, and/or by
13   virtue of the creation of asbestos dust and failure to protect from asbestos dust, and/or on or
14   about the premises of and by, including, but not limited to:  **AIR & LIQUID SYSTEMS**
15   **CORPORATION**, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually
16   and as successor by merger to BUFFALO PUMPS, INC., individually and successor in
17   interest to BUFFALO FORGE COMPANY (for gaskets, packing, insulation and pumps);
18   **AURORA PUMP COMPANY** (for gaskets, packing, insulation and pumps);
19   **BLACKMER PUMP COMPANY** (for gaskets, packing, insulation and pumps);
20   **BORGWARNER MORSE TEC LLC** as successor by merger to BORG-WARNER
21   CORPORATION (for automotive products); BW/IP, INC., individually and as successor in
22   interest to BYRON JACKSON PUMP CO. (for gaskets, packing, insulation and pumps);
23   **CBS CORPORATION**, f/k/a VIACOM, INC., successor by merger to CBS
24   CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in
25   interest to BF STURTEVANT (for BF Sturtevant compressors, pumps, turbines, insulation,
26   gaskets, and packing); **CLA-VAL CO.**, a division of GRISWOLD INDUSTRIES (for
27   gaskets, packing, insulation and valves); CRANE CO. (for gaskets, packing, insulation and
28   pipe); **ELLIOTT COMPANY** aka ELLIOTT TURBOMACHINERY CO., INC. (for

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

gaskets, packing, insulation, pumps and turbines); FLOWSERVE US INC., individually
and as successor in interest to EDWARD VALVE, INC. (for gaskets, packing, insulation and
valves); FMC CORPORATION, individually and as successor in interest to NORTHERN
PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY, CHICAGO
PUMP COMPANY, AND PEERLESS PUMP COMPANY (for gaskets, packing, insulation,
pumps and valves); FOSTER WHEELER, LLC, as successor in interest to FOSTER
WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION (for
boilers, economizers, insulation, gaskets, and packing); GARDNER DENVER, INC. f/k/a
GARDNER DENVER MACHINERY, INC. (for gaskets, packing, insulation and pumps);
GENERAL ELECTRIC COMPANY (for turbines, pumps, compressors and electrical
equipment); GOULDS PUMPS, INC. (for gaskets, packing, insulation and pumps);
HONEYWELL INTERNATIONAL INC., f/k/a and individually and as successor in
interest to ALLIED SIGNAL, INC., individually and as successor in interest to BENDIX
CORPORATION (for automotive products); IMO INDUSTRIES, INC., sued individually
and as successor in interest to DELAVAL STEAM TURBINE COMPANY and DELAVAL,
INC. (for gaskets, packing, insulation, pumps and turbines); INGERSOLL-RAND
COMPANY, individually and, as successor in interest to TERRY STEAM TURBINE
COMPANY (for pumps, insulation, gaskets and packing) ITT LLC, f/k/a ITT
CORPORATION, f/k/a ITT INDUSTRIES, INC., individually and as successor in interest
to BELL & GOSSETT COMPANY, FOSTER ENGINEERING COMPANY and
KENNEDY VALVE COMPANY (for pumps, valves, turbines, insulation, gaskets, and
packing); THE NASH ENGINEERING COMPANY (for pumps, insulation, gaskets, and
packing); VIGOR SHIPYARDS, INC., formerly known as TODD PACIFIC SHIPYARD
CORPORATION (for creating asbestos dust); WARREN PUMPS, LLC, f/k/a WARREN
PUMPS, INC., individually and as successor in interest to QUIMBY PUMP COMPANY
(for gaskets, packing, insulation and pumps); and DOES 1 through 400, and each of them
inclusive (hereafter "Product Defendants"), in a manner that was reasonably foreseeable to
said defendants.

12.    At all times herein mentioned, the Product Defendants, and each of them, were engaged in the business of researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, repairing, installing, demolishing, contracting for installation, contracting others to install, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos and/or products containing asbestos and/or products which created an asbestos hazard, or are engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, and marketing of safety equipment, including respiratory protective devices which were intended to block the entry of asbestos fibers into the bodies of workers who were exposed to asbestos in the workplace and other locations.

13.    At all times herein mentioned, the Product Defendants, and each of them, negligently and carelessly researched, tested or failed to test, warned or failed to warn, failed to recall or retrofit, failed to provide protective measures to prevent take home exposure, failed to warn of the dangers to those who come in contact with users, manufactured and/or caused to be manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied, leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished, contracted for installation, contracted others to install, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised asbestos and/or products containing asbestos and/or products which created an asbestos hazard, and/or safety equipment intended to block the entry of asbestos, and those products did, in fact, proximately cause personal injuries to users, consumers, workers, persons working around or living with persons working with or around such products, and others including plaintiff DOUGLAS WILBER, while being used in a manner that was intended by, or otherwise reasonably foreseeable to, said defendants, thereby rendering said products unsafe and dangerous for use by the consumers, users, bystanders or workers exposed thereto.

14.    At all times herein mentioned, the Product Defendants, and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and said

WEITZ & LUXENBERG P.C.
(A PROFESSIONAL CORPORATION)
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1   Defendants breached said duty of reasonable care in that Product Defendants, and each of
2   them, failed to safely and adequately design, manufacture and/or sell said defendants'
3   products; failed to test said products; failed to investigate the hazards of said products; failed
4   to recall or retrofit; failed to provide protective measures to prevent take home exposure;
5   failed to warn those persons who would be exposed; failed to warn of the dangers to those
6   who come in contact with users, including plaintiff DOUGLAS WILBER of the health
7   hazards of using said defendants' products; failed to disclose the known or knowable dangers
8   of using said defendants' products; failed to obtain suitable alternative materials to asbestos
9   when such alternatives were available; and as otherwise stated herein.

10      15.   On or before 1932 and thereafter, the Product Defendants, and each of them,
11   were aware and knew of the dangers associated with breathing asbestos containing dust, and
12   said defendants also were aware and knew that users of asbestos and asbestos products, as
13   well as members of the general public who would be exposed to asbestos and asbestos
14   containing products, had no knowledge or information indicating that asbestos could cause
15   injury, and said defendants knew that the users of asbestos and asbestos containing products,
16   as well as members of the general public who were exposed to asbestos and asbestos
17   containing products would assume, and in fact did assume, that exposure to asbestos and
18   asbestos containing products was safe, when in fact said exposure was extremely hazardous
19   to human life, and propagated misinformation intended to instill in users of the Product
20   Defendants' products a false security about the safety of said defendants' products.

21      16.   The Product Defendants, and each of them, knew and failed to disclose that
22   plaintiff DOUGLAS WILBER and anyone similarly situated, upon inhalation of asbestos
23   would, in time, have a substantial risk of developing irreversible conditions of
24   pneumoconiosis, asbestosis, mesothelioma and/or cancer, and said defendants knew, and
25   failed to disclose that inhalation of asbestos would cause pathological effects without
26   noticeable trauma to the public, including buyers, users and physicians such that physicians
27   could not examine, diagnose and treat those who were exposed to asbestos, including
28   plaintiff.

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  17.   The Product Defendants, and each of them, despite said defendants' knowledge

2  of the substantial risks associated with exposure to asbestos, willfully and knowingly

3  concealed and actively suppressed and promoted the suppression from all consumers,

4  including plaintiff DOUGLAS WILBER, medical and scientific information concerning the

5  health hazards associated with inhalation of asbestos, including the substantial risk of injury

6  or death therefrom, in conscious disregard of the rights, safety and welfare of users,

7  consumers, workers, persons working around or living with persons working with or around

8  such asbestos and asbestos-containing products, and others including plaintiff DOUGLAS

9  WILBER.

10  18.   Rather than attempting to protect users and workers from, or warn workers and

11  users of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

12  containing products, the Product Defendants, and each of them, intentionally failed to reveal

13  their knowledge of said risk, fraudulently, consciously and actively concealed and

14  suppressed said knowledge from members of the general public that asbestos and asbestos

15  products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of

16  said implied representations. Said defendants propagated misinformation to instill a false

17  sense of security and safety to instill in users a false sense of security about the safety of their

18  products.

19  19.   In researching, testing, manufacturing, distributing, labeling, installing and

20  marketing said products, the Product Defendants, and each of them, did so with conscious

21  disregard for the safety of the users of said products, in that said defendants had specific

22  prior knowledge that there was a high risk of injury or death resulting from exposure to

23  asbestos or asbestos-containing products, including but not limited to mesothelioma. Said

24  knowledge was obtained, in part, from scientific studies, government data, and medical data

25  to which said defendants had access, as well as scientific studies performed by, at the request

26  of, or on with the assistance of, said defendants, and which knowledge was obtained by said

27  defendants on or before 1932, and thereafter.

28  20.   The above referenced conduct of Product Defendants, and each of them, was

1  motivated by the financial interest of said defendants in the continuing, uninterrupted

2  distribution and marketing of asbestos and asbestos-containing products.  In pursuit of said

3  financial motivation, said defendants consciously disregarded the safety of the users of, and

4  persons exposed to, asbestos and asbestos-containing products, and were in fact, consciously

5  willing to permit asbestos and asbestos-containing products to cause injury to workers and

6  users thereof, and persons exposed thereto, including plaintiff.

7      21.    With said knowledge, Product Defendants, and each of them, opted to

8  manufacture, distribute and install said asbestos and asbestos-containing products without

9  attempting to protect users from or warn users of, the high risk of injury or death resulting

10  from exposure to asbestos and asbestos products.

11      22.    Plaintiffs were not aware that exposure to asbestos presented any risk of injury

12  and/or disease to DOUGLAS WILBER, and had not been advised or informed by anyone

13  that he could contract any disease, sickness or injury as a result of working in the vicinity of

14  asbestos.

15      23.    Product Defendants, and each of them, were aware that such dust created an

16  increased risk of asbestos disease for all users, consumers, or others who breathed said

17  asbestos-containing dust.

18      24.    Plaintiffs are informed and believe, and based thereon allege, that the injuries

19  complained of herein were proximately caused by the negligence of the Product Defendants,

20  and each of them, in that said defendants knew or should have known that the asbestos dust

21  would be generated and released from their asbestos-containing products during the regular

22  and intended uses of such asbestos products, and that said asbestos-containing products and

23  the asbestos dust exposure there from created an increased risk of asbestos disease for all

24  users, consumers, or others, including plaintiff, who breathed said asbestos-containing dust

25  which said defendants knew or should have known was harmful to the body and health of

26  persons installing, handling, and using asbestos and asbestos-containing products, as well as

27  to persons in the immediate vicinity of such installation, use and handling, and that such

28  asbestos products and dust were capable of causing and did, in fact, cause personal injuries

- 13 -

PLAINTIFFS' COMPLAINT

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1  to users, consumers and others, while being used in a manner reasonably foreseeable, hereby

2  rendering said substance unsafe and dangerous for use by plaintiff.

3      25.  Plaintiffs are informed and believe, and based thereon allege, that the injuries

4  complained of herein were proximately caused by the negligence of the Product Defendants,

5  and each of them, in that said defendants failed to take reasonable care to warn the plaintiff

6  of the danger and harm to which he was exposed while installing, handling and otherwise

7  using said products, as well as while he was in the vicinity of the use, installation, and

8  handling of said products, and failed to specify, recommend, supply, install, sell, and use

9  readily available substitutes which do not and did not pose the danger to human health.

10      26.  The conduct of the Product Defendants, and each of them, as described in this

11  cause of action was a substantial factor, and a legal cause of the injuries and damages

12  sustained by plaintiff, and that said defendants demonstrated such an entire want of care as to

13  establish that their acts and omissions were the result of actual conscious indifference to the

14  rights, safety, and welfare of plaintiff DOUGLAS WILBER, and that such intentional acts

15  and omissions were substantial factors in causing his disease and injuries.

16      27.  As a direct and proximate result of the aforesaid conduct of said Product

17  Defendants, and each of them, plaintiff DOUGLAS WILBER has suffered, and continues to

18  suffer, permanent injuries to his person, body and health all to his general damage in a sum

19  in excess of the jurisdictional limits of this unlimited Court.

20      28.  As a direct and proximate result of the aforesaid conduct of said Product

21  Defendants, and each of them, plaintiff DOUGLAS WILBER was and will be compelled to

22  and did employ medical services in an amount which has not as yet been fully ascertained

23  and which will be asserted according to proof at trial.

24      29.  As a direct and proximate result of the aforesaid conduct of said Product

25  Defendants, and each of them, plaintiffs have and/or will suffer loss of income and earnings,

26  past, present and future and earning capacity in an amount which has not as yet been fully

27  ascertained and which will be asserted according to proof at trial.

28      30.  As a direct and proximate result of the aforesaid conduct of said Product

-14-

PLAINTIFFS' COMPLAINT

1    Defendants, and each of them, plaintiffs did necessarily incur and in the future will incur

2    incidental expenses and damages in an amount which has not as yet been fully ascertained

3    and which will be asserted according to proof at trial.

4         31.    In particular, plaintiffs would show that, as alleged here in this cause of action

5    and throughout this complaint, that such intentional, grossly wanton acts and omissions by

6    said Product Defendants, and DOES 1 through 400, and each of them; and their officers,

7    directors, and managing agents, inclusive, were substantial factors in, and participated in,

8    authorized, expressly and impliedly ratified, and had full knowledge of or should have

9    known, each of the acts set forth here causing his disease and injuries.  As the above

10   referenced conduct complained of in this complaint of said Product Defendants, and DOES 1

11   through 400, and each of them, and their officers, directors, and managing agents, inclusive,

12   was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product

13   Defendants, and each of them, inclusive, demonstrated such an entire want of care as to

14   establish that their acts and omissions were the result of actual conscious indifference to the

15   rights, safety, and welfare of plaintiff DOUGLAS WILBER and of workers exposed to

16   asbestos and asbestos products, such that plaintiffs, for the sake of example, and by way of

17   punishing said defendants, seeks punitive damages according to proof.

18                          SECOND CAUSE OF ACTION

19              BREACH OF EXPRESS AND IMPLIED WARRANTIES

20              (Against All Product Defendants and DOES 1 through 400)

21        32.    Plaintiff re-alleges and incorporates here by reference, as though fully set forth

22   at length herein, all of the allegations of paragraphs 1 through 31 above, inclusive.

23        33.    Defendants and DOES 1 through 400, and each of them, inclusive, sold and/or

24   otherwise supplied the asbestos containing products, materials and equipment to Plaintiff

25   and/or his employers.

26        34.    That in connection with the manufacture, preparation, sale, specification,

27   installation, use, and supply of asbestos products, Product Defendants, and each of them,

28   expressly and impliedly warranted that said products were of good and merchantable quality

WEITZ & LUXENBERG, P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1 and fit for their intended use. However, in truth and in fact said products contained harmful
2 and deleterious asbestos fibers, known to the defendant herein to be defective and harmful
3 to humans exposed thereto.

4     35. Said products were not and are not suitable for the purposes for which said
5 products were intended, supplied and relied upon, nor suitable for any other similar purpose,
6 including their use by human beings in confined spaces where humans would be physically
7 present, working, resting or breathing.

8     36. Plaintiffs relied on the express and implied warranties of Product Defendants,
9 and each of them, in the use of and exposure to said asbestos and asbestos products, and
10 plaintiff DOUGLAS WILBER was using and/or exposed to said asbestos in a reasonably
11 foreseeable intended manner.

12     37. Product Defendants, and each of them, breached the above-described express
13 and implied warranties in that said substance was defective, which defects permitted and/or
14 caused said substance to seriously and permanently cause injury to plaintiff while using said
15 substance in a manner that was reasonably foreseeable.

16     38. The breaches of warranties by the Product Defendants, and each of them, as
17 described in this cause of action were a substantial factor and a legal cause of the injuries and
18 damages sustained by plaintiff.

19     39. As a direct and proximate result of the above-described breaches of warranties
20 by said Product Defendants, and each of them, plaintiff DOUGLAS WILBER suffered
21 severe and permanent injuries to his person, and plaintiff suffered damages as alleged above.

22     40. In particular, plaintiffs would show that as alleged here in this cause of action
23 and throughout this complaint, that such intentional, grossly wanton acts and omissions by
24 said Product Defendants, and DOES 11 through 400, and each of them and their officers,
25 directors, and managing agents, inclusive, were substantial factors in, and participated in,
26 authorized, expressly and impliedly ratified, and had full knowledge of or should have
27 known, each of the acts set forth here causing his disease and injuries. As the above
28 referenced conduct complained of in this complaint of said Product Defendants, and DOES 1

WEITZ & LUXENBERG P.C.
(A PROFESSIONAL CORPORATION)
LAW OFFICES
LOS ANGELES, CALIFORNIA 90067

1  through 400, and each of them, and their officers, directors, and managing agents, inclusive,

2  was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product

3  Defendants, and each of them inclusive, demonstrated such an entire want of care as to

4  establish that their acts and omissions were the result of actual conscious indifference to the

5  rights, safety, and welfare of plaintiff DOUGLAS WILBER and of workers exposed to

6  asbestos and asbestos products, such that plaintiffs, for the sake of example, and by way of

7  punishing said defendants, seeks punitive damages according to proof.

8                          **THIRD CAUSE OF ACTION**

9                          **STRICT LIABILITY IN TORT**

10              **(Against All Product Defendants and DOES 1 through 400)**

11        41.   Plaintiffs re-allege and incorporate here by reference, as though fully set forth

12  at length herein, all of the allegations of paragraphs 1 through 40 above, inclusive.

13        42.   At all times mentioned herein, the Product Defendants, and each of them,

14  manufactured, fabricated, designed, developed, labeled, assembled, distributed, supplied,

15  leased, bought, offered for sale, sold, inspected, serviced, repaired, installed, demolished,

16  contracted for installation, contracted others to install, repaired, marketed, warranted,

17  rebranded, manufactured for others, packaged, and advertised asbestos and/or products

18  containing asbestos and/or products which created an asbestos hazard, and/or safety

19  equipment intended to block the entry of asbestos fibers, and that asbestos and/or products

20  containing asbestos and/or products which created an asbestos hazard and/or safety

21  equipment intended to block the entry of asbestos fibers were defective in that they were not

22  as safe as an ordinary consumer of such products would expect; and that the gravity of the

23  potential harm resulting from the use of the defective products of the Product Defendants,

24  and each of them, and the risk of said asbestos and asbestos-containing products outweighed

25  any benefit of the said defendants' design, when safer alternative designs and materials

26  existed and were available that could and should have been substituted and used instead of

27  the deadly asbestos, including providing adequate warning of such potential harm.

28        43.   At all times mentioned herein, the Product Defendants, and each of them, were

                                    -17-

1  aware of the dangerous and defective nature of asbestos and asbestos-containing products

2  when they were used in their intended or reasonably foreseeable manner.

3      44.  The Product Defendants, and each of them, placed said asbestos products on

4  the market knowing the asbestos-containing products would be used without inspection for

5  such defects and unsafe conditions; and that said defendants nonetheless took no action to

6  warn or otherwise protect exposed persons, including plaintiff, who foreseeably would be

7  exposed to these defective and inadequately labeled asbestos and asbestos-containing

8  products.

9      45.  The asbestos and asbestos-containing products, components and assemblies of

10  the Product Defendants, and each of them, were substantially the same as when they left said

11  defendants' possession.

12      46.  The aforementioned asbestos and asbestos-containing products of the Product

13  Defendants, and each of them, were used by plaintiff and exposed persons in the manner for

14  which they were intended or in a manner that was or would be reasonably foreseeable; and

15  that plaintiff DOUGLAS WILBER was exposed to said asbestos and asbestos-containing

16  products in a manner foreseeable to said defendants.

17      47.  The dangers inherent in breathing asbestos-containing dust and the dangers

18  inherent in asbestos-containing products, components and assemblies were unknown and

19  unforeseeable to plaintiff DOUGLAS WILBER, and plaintiff had not been advised or

20  informed by anyone that he could contract any disease, sickness or injury as a result of

21  working in the vicinity of asbestos.

22      48.  The failure to warn by and the product defect in the asbestos and asbestos-

23  containing products of Product Defendants, and each of them, were substantial factors and a

24  legal cause of plaintiff DOUGLAS WILBER'S injuries and damages thereby sustained by

25  plaintiffs, and that said defendants demonstrated such an entire want of care as to establish

26  that their acts and omissions were the result of actual conscious indifference to the rights,

27  safety, and welfare of plaintiff DOUGLAS WILBER, and that such intentional acts and

28  omissions were substantial factors in causing his disease and injuries.

18.

PLAINTIFFS' COMPLAINT

49.   As a direct and proximate result of the aforesaid conduct of said Product Defendants, and each of them, plaintiff DOUGLAS WILBER suffered severe and permanent injuries to his person, and plaintiff suffered damages as alleged above.

50.   In particular, plaintiffs would show that, as alleged here in this cause of action and throughout this complaint, that such intentional, grossly wanton acts and omissions by said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, were substantial factors in, and participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known, each of the acts set forth here causing his disease and injuries.   As the above referenced conduct complained of in this complaint of said Product Defendants, and DOES 1 through 400, and each of them, and their officers, directors, and managing agents, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and said Product Defendants, and each of them, inclusive, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of plaintiff DOUGLAS WILBER and of workers exposed to asbestos and asbestos products, such that plaintiffs, for the sake of example, and by way of punishing said defendants, seeks punitive damages according to proof.

## FOURTH CAUSE OF ACTION
## PREMISES OWNER/CONTRACTOR LIABILITY
### (Against All Premises Defendants and DOES 1 through 400)

51.   Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of paragraphs 1 through 50 above, inclusive.

52.   Plaintiff DOUGLAS WILBER entered, performed work and was otherwise on or about the premises of DOES 1 through 400, and each of them, inclusive (hereafter "Premises Defendants"), including performing that which was to defendants' benefit and advantage and at defendants' request and invitation.   In so doing, plaintiff DOUGLAS WILBER was exposed to dangerous asbestos fibers.

53.   At all times herein mentioned, the Premises Defendants, and each of them

-19-

WEITZ & LUXENBERG, P.C.
LAW OFFICES
LOS ANGELES, CALIFORNIA

1  were the owners, lessors, operators, managers, general contractors, subcontractors or
2  otherwise controlled and maintained certain premises or portions thereof, on which asbestos
3  and asbestos-containing products were, fabricated, constructed, manufactured, mixed,
4  processed, milled, crushed, dumped, piled, disposed of, installed, maintained, used, repaired,
5  replaced or otherwise disturbed (hereafter "use(d) handl(ed)(ing) or disturb(ed)(ance)") by
6  their own workers and/or by various contractors, so as to allow and cause and as a result
7  dangerous airborne asbestos fibers were present on and about said premises while and/or
8  prior to the times plaintiff DOUGLAS WILBER was present creating a hazardous condition
9  upon said premises.

10       54.   At all times herein mentioned, the Premises Defendants, and each of them,
11  knew, or in the exercise of ordinary and reasonable care should have known, that the
12  contractors and/or subcontractors hired and/or retained were not competent, that the premises
13  in their control would be used as alleged without knowledge of, or inspection for, defects or
14  dangerous conditions and that the persons working on or using said premises would not be
15  aware of the aforesaid hazardous conditions on the premises to which they were exposed.

16       55.   At all times mentioned herein, the Premises Defendants, and each of them,
17  negligently failed to maintain, manage, inspect, survey, or control said premises, or to abate
18  or correct, or to warn plaintiff DOUGLAS WILBER of the existence of the aforesaid
19  dangerous conditions and hazards on said premises.

20       56.   At all times herein mentioned, the Premises Defendants, and each of them,
21  knew, negligently and carelessly used asbestos-containing products in construction and
22  renovation, hired contractors or subcontractors, created and/or approved building
23  specifications, supervised or failed to supervise contractors and subcontractors, researched or
24  failed to research, tested or failed to test, warned or failed to warn, failed to recall or retrofit,
25  labeled or failed to label, failed to provide protection for, failed to provide a safe work place,
26  failed to provide adequate safety measures, devices and equipment, failed to provide
27  adequate ventilation, failed to provide adequate signs, used asbestos-containing products in
28  construction and renovation and failed to provide sufficient protection to plaintiff from

-20-

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067

1    hazards of asbestos, the danger of which said defendants were aware.

2       57. At all times herein mentioned, the asbestos-containing products, including, but

3    not limited to, asbestos-containing building materials and products to be used, handled

4    and/or disturbed on the premises of Premises Defendants, and each of them, caused personal

5    injuries to users, consumers, workers and others, including plaintiff DOUGLAS WILBER,

6    while being used, removed and/or handled in a manner reasonably foreseeable, thereby

7    rendering these premises unsafe and dangerous to consumers, users, bystanders or workers

8    exposed thereto, including plaintiff DOUGLAS WILBER.

9       58. At all times herein mentioned, the Premises Defendants, and each of them,

10   knew and could foresee that asbestos and asbestos-containing products used, handled and/or

11   disturbed on the said defendants' premises, and the asbestos dust, debris, fiber and

12   particulate released from the same, created an unreasonable risk of harm to persons entering

13   upon or present near or about the premises of said defendants.

14      59. At all times herein mentioned, the Premises Defendants, and each of them,

15   knew and could reasonably foresee, or in the exercise of ordinary care should have known,

16   that said premises would be entered by persons, including plaintiff DOUGLAS WILBER

17   without knowledge of, or inspection for, defects or dangerous conditions and that said

18   persons would not be aware of the aforesaid unreasonable risk of harm.

19      60. At all times herein mentioned, the Premises Defendants, and each of them,

20   knew and reasonably could foresee, or in the exercise of ordinary care should have known,

21   that the asbestos dust, debris, fiber and particulate released into the ambient air on and about

22   the premises of said defendants generated from the same above-described use, handling

23   and/or disturbance of the asbestos and asbestos-containing products, including asbestos-

24   laden waste derived from the premises of said defendants, was dangerous and created an

25   unreasonable risk of harm to persons entering upon or being present near or about the

26   premises of said defendants.

27      61. At all times herein mentioned, the Premises Defendants, and each of them, had

28   a duty to disclose the presence of, and the dangers and hazards presented by and associated

WEITZ & LUXENBERG, P.C.
A NEW YORK CORPORATION
1880 CENTURY PARK EAST, STE 700
LOS ANGELES, CALIFORNIA 90067

1  with the asbestos-containing products and the asbestos fibers released and generated from the

2  same above-described use, handling and/or disturbance thereof on and about the premises of

3  said defendants.

4      62.  At all times herein mentioned, the Premises Defendants, and each of them, had

5  a duty to disclose the presence of, and the dangers and hazards presented by and associated

6  with the asbestos dust, debris, fiber and particulate released into the ambient air on and about

7  the premises of said defendants, including asbestos-laden waste derived from the premises of

8  said defendants.

9      63.  At all times herein mentioned, the Premises Defendants, and each of them, had

10  a duty to properly remove and/or abate said asbestos at these facilities before or during his

11  presence, but failed to do so. The unreasonably dangerous conditions at these facilities was

12  of such a nature and existed long enough so that it was, or reasonably should have been,

13  discovered and corrected by a premises owner using reasonable care.

14      64.  At all times herein mentioned, plaintiff was continuously exposed to asbestos

15  and asbestos-containing dust while on or about the premises of the Premises Defendants

16  without the provision of appropriate safeguards by said defendants who had the duty

17  responsibility for such.

18      65.  Despite the knowledge by the Premises Defendants, and each of them, of the

19  aforesaid risks of harm from asbestos and asbestos products generally, and from the asbestos

20  dust, debris, fiber and particulate in the ambient air on or about the premises of said

21  defendants generated from the same above-described use, handling and/or disturbance of

22  asbestos and asbestos-containing products on and about the premises of said defendants, said

23  Premises Defendants, and each of them, failed to disclose or warn persons forseeably

24  exposed to asbestos, including plaintiff, of those asbestos hazards and dangers.

25      66.  Plaintiff DOUGLAS WILBER was unaware of the risk of harm created by the

26  aforesaid presence of asbestos products and materials on said premises of the Premises

27  Defendants, and each of them, and plaintiff was also unaware of the unreasonable risk of

28  harm created by the aforesaid dangerous asbestos dust, debris, fiber and particulate in the

1. | ambient air on and about the premises of said defendants.

2. |    67.  At all times herein mentioned, the Premises Defendants, and each of them,

3. | retained control of the work and negligently failed to implement and/or failed to have others

4. | implement proper safety precautions and/or the use of proper work practices to guard

5. | against those asbestos hazards on the premises of said defendants thereby creating an

6. | unreasonable risk of harm to persons entering or being on, about or around said asbestos

7. | contaminated premises.

8. |    68.  Despite said knowledge, defendants, including Premises Defendants, and each

9. | of them, misrepresented that their premises were safe and free of defects and/or failed to

10. | disclose and concealed the presence of the asbestos dust, debris, fiber and particulate in the

11. | ambient air on or about the premises of said defendants generated from the same above-

12. | described use, handling and/or disturbance of asbestos and asbestos-containing products on

13. | and about the premises of said defendants, including asbestos-laden waste derived from the

14. | premises of said defendants, thereby creating an unreasonable risk of harm to persons

15. | entering said premises and other exposed persons, including plaintiff.

16. |    69.  In reliance upon the foregoing acts, omissions and representations, plaintiff

17. | DOUGLAS WILBER entered and was present upon and/or performed work on said premises

18. | of the Premises Defendants, and each of them, which was to defendants' benefit and

19. | advantage and at defendants' request and invitation, whereupon there was dangerous

20. | asbestos dust, debris, fiber and particulate in the ambient air as a result of the same above-

21. | described use, handling and/or disturbance of asbestos and asbestos-containing products on

22. | and about the premises of said defendants, including asbestos-laden waste derived from the

23. | premises of said defendants. In so doing, plaintiff was exposed to dangerous asbestos fibers

24. | for which Premises Defendants are liable.

25. |    70.  At all times herein mentioned, despite the knowledge by the Premises

26. | Defendants, and each of them, of the aforesaid risk of harm from asbestos and/or asbestos

27. | products on or from its premises, said defendants retained control of the work and

28. | negligently failed to implement and/or failed to have others implement proper safety

-23-

PLAINTIFFS' COMPLAINT

1 | precautions, and/or the use of proper work practices to guard against those asbestos hazards
2 | from the same above-described use, handling and/or disturbance of asbestos and/or asbestos
3 | products on or from said defendants' premises creating an unreasonable risk of harm to
4 | persons entering or being on, about or around said asbestos-contaminated premises.

5 |     71.   At all times herein mentioned, the Premises Defendants, and each of them,
6 | were aware and knew of the dangers associated with breathing asbestos containing dust, and
7 | that users of asbestos and asbestos products, as well as persons entering or being on, about or
8 | around the premises who would be exposed to asbestos and asbestos containing products,
9 | had no knowledge or information indicating that asbestos could cause injury, and said
10 | Premises Defendants knew that the users of asbestos and asbestos-containing products, as
11 | well as persons entering or being on, about or around the premises who were exposed to
12 | asbestos and asbestos-containing products, would assume, and in fact did assume, that
13 | exposure to asbestos and asbestos-containing products was safe, when in fact said exposure
14 | was extremely hazardous to human life, and intended to instill a false security about the
15 | safety of the premises.

16 |     72.   The Premises Defendants, and each of them, knew and failed to disclose that
17 | plaintiff DOUGLAS WILBER, and anyone similarly situated, upon inhalation of asbestos
18 | would, in time, have a substantial risk of developing irreversible conditions of
19 | pneumoconiosis, asbestosis, mesothelioma and/or cancer, and knew and failed to disclose
20 | that inhalation of asbestos would cause pathological effects without noticeable trauma to the
21 | public, including buyers, users, and physicians such that physicians could not examine,
22 | diagnose and treat those who were exposed to asbestos, including plaintiff.

23 |     73.   Despite said Premises Defendants' knowledge of the substantial risks associated
24 | with exposure to asbestos, willfully and knowingly concealed and actively suppressed and
25 | promoted the suppression from all consumers and persons entering or being on said
26 | premises, including plaintiff DOUGLAS WILBER, medical and scientific information
27 | concerning the health hazards associated with inhalation of asbestos, including the
28 | substantial risk of injury or death therefrom in conscious disregard of the rights, safety and

1 | welfare of users, consumers, workers, persons working on around the premises or living with

2 | persons entering or being on, about or around said asbestos-contaminated premises.

3 |     74.   Rather than attempting to protect, or warn persons entering or being on, about

4 | or around the premises, the high risk of injury or death resulting from exposure to asbestos

5 | and asbestos-containing products, the Premises Defendants, and each of them, intentionally

6 | failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed

7 | and suppressed said knowledge from persons entering or being on, about or around the

8 | premises that asbestos and asbestos products were unsafe for all reasonably foreseeable use,

9 | with the knowledge of the falsity of said, implied representations. Said defendants

10 | propagated misinformation to instill a false sense of security and safety to instill in persons

11 | entering or being on, about or around the premises a false sense of security about the safety

12 | of the premises.

13 |     75.   In so doing, the Premises Defendants, and each of them, did so with conscious

14 | disregard for the safety of persons entering or being on, about or around the premises, in that

15 | said defendants had specific prior knowledge that there was a high risk of injury or death

16 | resulting from exposure to asbestos or asbestos-containing products being used on the

17 | premises, including but not limited to mesothelioma. Said knowledge was obtained in part

18 | from scientific studies, government data, and medical data to which said defendants had

19 | access, as well as scientific studies performed by, at the request of, or with the assistance of,

20 | said defendants, and which knowledge was obtained by said defendants on or before 1932,

21 | and thereafter.

22 |     76.   The above referenced conduct of said Premises Defendants, and each of them,

23 | was motivated solely by the financial interest of said defendants and in pursuance of said

24 | financial motivation, said defendants consciously disregarded the safety of the users of, and

25 | persons exposed to, asbestos and asbestos-containing products, and were in fact consciously

26 | willing to permit asbestos and asbestos-containing products to cause injury to workers and

27 | users thereof, and persons exposed thereto, including plaintiff.

28 |     77.   With said knowledge, said Product Defendants, and each of them, opted to

-25-

PLAINTIFFS' COMPLAINT

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
LOS ANGELES, CALIFORNIA

1 manufacture, distribute and install said asbestos and asbestos-containing products.

2   78. Despite the knowledge by the Premises Defendants, and each of them of the

3 aforesaid risk of harm from asbestos and/or asbestos products on or from its premises, and

4 without attempting to protect persons entering or being on, about or around the premises of

5 the high risk of injury or death resulting from exposure to asbestos the said defendants'

6 premises, the Premises Defendants, and each of them, negligently provided unsafe

7 equipment, products and materials, including, but not limited to, asbestos and asbestos-

8 containing products, to workers and others, including plaintiff DOUGLAS WILBER, which

9 created a risk of harm to persons entering said premises and persons exposed to asbestos

10 dust, debris, fiber and particulate from the asbestos and asbestos-containing products used,

11 handled or disturbed as hereinabove described on the premises of Premises Defendants.

12   79. The unreasonably dangerous conditions at the premises of the Premises

13 Defendants was of such a nature and existed long enough so that it was, or reasonably should

14 have been, discovered and corrected by said defendants using reasonable care.

15   80. As a consequence, exposed persons, including plaintiff, entered and performed

16 work in and on said premises which was to defendants' benefit and advantage and at

17 defendants' request and invitation. In so doing and as a consequence thereof, plaintiff was

18 exposed to dangerous quantities of asbestos dust, debris, fiber and particulate from the

19 premises of Premises Defendants.

20   81. Plaintiffs were unaware of the risk of harm created by the aforesaid presence of

21 asbestos products and materials on said premises and negligent provision of equipment,

22 products and materials, including, but not limited to, asbestos and asbestos-containing

23 products.

24   82. The conduct of Premises Defendants, and each of them, were a substantial

25 factor and a legal cause of plaintiff DOUGLAS WILBER's injuries and damages thereby

26 sustained by plaintiff, and that said defendants demonstrated such an entire want of care as to

27 establish that their acts and omissions were the result of actual conscious indifference to the

28 rights, safety, and welfare of plaintiff DOUGLAS WILBER and that such intentional acts

1 | and omissions were substantial factors in causing his disease and injuries.

2 |       83.   Plaintiff DOUGLAS WILBER's injuries and disease were the result of

3 | intentional acts and/or omissions, gross negligence and malice in the use of asbestos at the

4 | premises of the Premises Defendants, and each of them, in that said defendants had a duty to

5 | properly remove and/or abate said asbestos at these facilities before or during his presence,

6 | but failed to do so.

7 |       84.   As a direct and proximate result of the aforesaid conduct of said Premises

8 | Defendants, and each of them, plaintiff DOUGLAS WILBER suffered severe and permanent

9 | injuries to his person, and plaintiff suffered damages as alleged above.

10 |       85.   In particular, plaintiffs would show that, as alleged here in this cause of action

11 | and throughout this complaint, that such intentional, grossly wanton acts and omissions by

12 | said Premises Defendants, and DOES 1 through 400, and each of them, and their officers,

13 | directors, and managing agents inclusive, were substantial factors in, and participated in,

14 | authorized, expressly and impliedly ratified, and had full knowledge of or should have

15 | known, each of the acts set forth here causing his disease and injuries. As the above

16 | referenced conduct complained of in this complaint of said Premises Defendants, and DOES

17 | 1 through 400, and, each of them and their officers, directors, and managing agents,

18 | inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and

19 | said Premises Defendants, and each of them inclusive, demonstrated such an entire want of

20 | care as to establish that their acts and omissions were the result of actual conscious

21 | indifference to the rights, safety, and welfare of plaintiff DOUGLAS WILBER and of

22 | workers exposed to asbestos and asbestos products, such that, plaintiffs, for the sake of

23 | example, and by way of punishing said defendants, seek punitive damages according to

24 | proof.

25 | ///

26 | ///

27 | ///

28 | ///

WEITZ & LUXENBERG P.C.
A PROFESSIONAL CORPORATION
LAW OFFICES
1880 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA, 90067

## FIFTH CAUSE OF ACTION

### LOSS OF CONSORTIUM

#### (Against All Defendants and DOES 1 through 400)

86. Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of paragraphs 1 through 85 above, inclusive.

87. Plaintiff FAITH WILBER was at all relevant times the lawfully wedded spouse of plaintiff DOUGLAS WILBER.

88. Plaintiff DOUGLAS WILBER sustained injuries caused by inhalation of asbestos fibers as alleged herein above. Prior to the aforesaid injuries, plaintiff DOUGLAS WILBER was able to and did perform duties as a spouse.

89. Subsequent to the injuries, and as a proximate result thereof, plaintiff DOUGLAS WILBER was unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and therefore has sustained special damages in an amount which has not as yet been fully ascertained and which will be asserted according to proof at trial.

90. Subsequent to the injuries and as a proximate result thereof, plaintiff FAITH WILBER suffered loss of consortium, including, but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of her said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

91. As the above referenced conduct complained of in this complaint of defendants and DOES 1 through 400, and each of them, inclusive, was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and that said defendants, and each of them, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of plaintiff FAITH WILBER, such that plaintiff, for the sake of example, and by way of punishing said defendants, seeks punitive damages according to proof.

-28-

PLAINTIFFS' COMPLAINT

1     WHEREFORE, plaintiffs pray judgment against defendants, and DOES 1 through

2   400, and each of them inclusive, as follows:

3       1. For general damages according to proof;

4       2. For special damages according to proof;

5       3. For medical and related expenses according to proof;

6       4. For loss of income, earning capacity, earning potential according to proof;

7       5. For exemplary or punitive damages according to proof;

8       6. For costs of suit herein;

9       7. For prejudgment interest on all damages as allowed by laws; and

10      8. For such other and further relief as the Court deems just and proper.

11 DATED: May 7, 2019     WEITZ & LUXEMBERG, P.C.

13     BY:

14     LEONARD SANDOVAL
    Attorneys for Plaintiffs

16       **DEMAND FOR JURY TRIAL**

17 Plaintiffs demand a jury trial on all issues.

18 DATED: May 7, 2019     WEITZ & LUXEMBERG, P.C.

20     BY:

21     LEONARD SANDOVAL
    Attorneys for Plaintiffs

29

PLAINTIFFS' COMPLAINT

## PRELIMINARY FACT SHEET
### (PERSONAL INJURY COMPLAINT)

**I.    BACKGROUND INFORMATION**

Name: Douglas Wilber

Address: 1797 Skyline Dr.                                City: Lemon Grove                State: CA

Number of years at present address: 33        Number of years living in current state: 49

Date of Birth: 9/30/1951

Based on the current facts, do plaintiff(s) intend on filing a motion for preference?

X____Yes        ____No;    __Do Not Know

Have you received, or have you applied for, Medicare benefits or Social Security Disability benefits?
____Yes        X____No

Have you ever resided in California? X____Yes        ____No;  If YES, provide cities in California where you resided and the dates you resided in each city:

City    San Diego, Lemon Grove                        Dates  1970 - Present

**II.    EXPOSURE**  (See Attachment)

Date of First Claimed Asbestos Exposure: 1966        Date of Last Claimed Asbestos Exposure: 1980

For each asbestos-containing product to which you claim you were exposed, please provide the following information (fill in the chart):

| Defendant | Product at Issue | Date(s) of Exposure | Employer | Location of Exposure | Type of Exposure (Direct, Occupational, Para-Occupational or Non-Occupational) |
|---|---|---|---|---|---|
| | | **[SEE ATTACHMENT]** | | | |
| | | | | | |
| | | | | | |

Have you ever served in the military? [X] _____ Yes _____ No

If yes:

(a)    Identify the branch of service: US Navy

(b)    Identify the dates of service: 1970 - 1990

(c)    Identify the rank and title: Machinist Mate

**III.    MEDICAL HISTORY**

1.    Which of the following diseases have you been diagnosed with? (Check all that apply:

[X]    Mesothelioma (pleural))
_____ Mesothelioma (peritoneal)
_____ Lung Cancer – Squamous Cell/Adenocarcinoma/Small Cell/Other (circle one)
_____ Asbestosis
_____ Pleural Disease
_____ Other    Specify:

2.    Date of diagnosis and name of diagnosing doctor (per disease, if more than one):
10/2/2018; Theodore Christian Prett

3.    Does (any) pathology material exist for the individual claiming an asbestos-related injury?
[X]    Yes _____ No
If YES, please identify what material exists and where it is presently located?
Pleural Biopsy; Naval Medical Center San Diego, 34800 Bob Wilson Dr., San Diego, CA 92134

4.    Have you ever smoked?    X    Yes _____ No
If YES, state years and quantity smoked: 1970 - 2008, 1.5 packs per day

II. EXPOSURE

| Defendant | Product at Issue | Date(s) of Exposure | Employer | Location of Exposure | Type of Exposure (Direct Occupational, Para-Occupational or Non-Occupational |
|---|---|---|---|---|---|
| AIR & LIQUID SYSTEMS CORPORATION, a subsidiary of AMPCO-PITTSBURGH CORPORATION, individually and as successor by merger to BUFFALO PUMPS, INC., individually and as successor in interest to BUFFALO FORGE COMPANY | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-886 | Direct Occupational |
| AURORA PUMP COMPANY | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-887 | Direct Occupational |
| BLACKMER PUMP COMPANY | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-888 | Direct Occupational |
| BORGWARNER MORSE TEC LLC as successor by merger to BORG-WARNER CORPORATION | for automotive products | 1968-1980 | TBD | Tacoma, WA; San Diego, CA | Direct Occupational (Tacoma, WA only); Para-Occupational |
| BW/IP, INC. individually and as successor in interest to BYRON JACKSON PUMP CO. | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-886 | Direct Occupational |

Preliminary Fact Sheet

## II. EXPOSURE

| | | | | | |
|---|---|---|---|---|---|
| CBS CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION as successor in interest to B.F. STURTEVANT | for B.F. Sturtevant compressors, pumps, turbines, insulation, gaskets, and packing | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-887 | Direct Occupational |
| CLA-VAL CO., a division of GRISWOLD INDUSTRIES | for gaskets, packing, insulation and valves | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-888 | Direct Occupational |
| CRANE CO. | for gaskets, packing, insulation and pipe | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-889 | Direct Occupational |
| ELLIOTT COMPANY aka ELLIOTT TURBOMACHINERY CO., INC. | for gaskets, packing, insulation, pumps and turbines | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-890 | Direct Occupational |
| FLOWSERVE US INC., individually and as successor in interest to EDWARD VALVE, INC. | for gaskets, packing, insulation and valves | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-891 | Direct Occupational |

Preliminary Fact Sheet

II. EXPOSURE

| | | | | |
|---|---|---|---|---|
| FMC CORPORATION, individually and as successor in interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY, CHICAGO PUMP COMPANY, AND PEERLESS PUMP COMPANY | for gaskets, packing, insulation, pumps and valves | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-892 | Direct Occupational |
| FOSTER WHEELER LLC, as successor in interest to FOSTER WHEELER CORPORATION and FOSTER WHEELER ENERGY CORPORATION | for boilers, economizers, insulation, gaskets, and packing | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Orleck DD-893 | Direct Occupational |
| GARDNER DENVER, INC. f/k/a GARDNER DENVER MACHINERY, INC. | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-894 | Direct Occupational |
| GENERAL ELECTRIC COMPANY | for turbines, pumps, compressors and electrical equipment | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-895 | Direct Occupational |
| GOULDS PUMPS, INC. | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-896 | Direct Occupational |

II. EXPOSURE

| | | | | | |
|---|---|---|---|---|---|
| HONEYWELL INTERNATIONAL INC., f/k/a and individually and as successor in interest to ALLIED SIGNAL, INC., individually and as successor in interest to BENDIX CORPORATION | for automotive products | 1970-1980 | TBD | Tacoma, WA; San Diego, CA | Direct Occupational (Tacoma, WA only); Para-Occupational |
| IMO INDUSTRIES, INC., individually and as successor-in-interest to DELAVAL STEAM TURBINE COMPANY and DELAVAL, INC. | for gaskets, packing, insulation, pumps and turbines | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-896 | Direct Occupational |
| INGERSOLL-RAND COMPANY, individually and as successor in interest to TERRY STEAM TURBINE COMPANY | for pumps, insulation, gaskets and packing | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-897 | Direct Occupational |
| ITT LLC, f/k/a ITT CORPORATION, f/k/a ITT INDUSTRIES, INC., individually and as successor-in-interest to BELL & GOSSETT COMPANY, FOSTER ENGINEERING COMPANY and KENNEDY VALVE COMPANY | for pumps, valves, turbines, insulation, gaskets, and packing | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-898 | Direct Occupational |
| THE NASH ENGINEERING COMPANY | for pumps, insulation, gaskets, and packing | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-899 | Direct Occupational |

Preliminary Fact Sheet

**II. EXPOSURE**

| VIGOR SHIPYARDS, INC. formerly known as TODD PACIFIC SHIPYARD CORPORATION | for creating asbestos dust | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-901 | Direct Occupational |
|---|---|---|---|---|---|
| WARREN PUMPS, LLC, f/k/a WARREN PUMPS, INC. individually and as successor in interest to QUIMBY PUMP COMPANY | for gaskets, packing, insulation and pumps | 1970-1980 | US Navy | San Diego Naval Shipyard; Long Beach Naval Shipyard; Pearl Harbor; Todd Shipyard; Tacoma, WA; USS Thomaston LSD-28; USS Orleck DD-902 | Direct Occupational |

Preliminary Fact Sheet